OPINION ON REHEARING

Hervey, J.,
delivered the opinion of the Court,
in which Keller, P.J., and Meyers, Keasler, Richardson, Newell, JJ., joined.
Appellant was found guilty of murder for killing her former boyfriend. She appealed, arguing that her right to a public trial 'was violated. The Fourth Court of Appeals agreed and reversed her conviction, holding that Appellant’s right to a public trial was violated during voir dire because the public was asked to leave the courtroom to accommodate a large venire panel. Cameron v. State, 415 S.W.3d 404, 406 (Tex.App.-San Antonio, 2013). On discretionary review, we affirmed the judgment of the court of appeals. Cameron v. State, No. PD-1427-13, 2014 WL 4996290, *1 (Tex.Crim.App. Oct. 8, 2014). However, we granted the State’s timely motion for rehearing and ordered further briefing and oral argument. Id. We will vacate the judgment of the court of appeals and remand this cause for further proceedings.
Facts
Vanessa Cameron was convicted of organizing a murder-for-hire plot to kill the father of her child for life-insurance proceeds. Just before jury selection began, defense counsel suggested that the bailiff had excluded the public from the courtroom, including Cameron’s family and friends, and objected that the exclusion violated his client’s right to a public trial. The following exchange occurred:
[THE COURT]: We recognize their right to be present during the voir dire. Pm looking around the courtroom, and the jury panel — we have 65 jury panel members that are going to be here. I notice for the record that every single chair that we have ■ available for'attorneys that come in during trial and every chair that we have available for other people have been removed and placed in the jury area because that is the only way we can accommodate the number of jurors in this courtroom.
So we’re talking about 65 jury panel members. It’s going to take up a huge majority of this courtroom, plus counsel table. I don’t see any room whatsoever where anybody else would be able to sit and observe.
Now, during — before we called the case, we saw a pretty significant number of family members that were walking in. There is no way this courtroom can accommodate them, and I certainly appreciate the security concerns of the State — excuse me, of the sheriffs de *66 partment. It is a public trial. It’s an open trial. Certainly people have the opportunity to observe. We just don’t know where to put them, Mr. Esparza.
[DEFENSE COUNSEL]: Judge, is the Court overruling my objection?
[THE COURT]: No, I’m not ruling. I’m just telling you,, where can we put them? Where are we going to put them?
[DEFENSE COUNSEL]: I understand, Judge.
[THE COURT]: I’m not overruling you. Where are we going to put them?
[DEFENSE COUNSEL]: And I still request a ruling from the Court.
[THE COURT]: Well, you’re — you’re objecting to something I haven’t made a ruling. What is it that you’re objecting to?
[DEFENSE COUNSEL]: That the public has been excluded from' — ■
[THE COURT]: No. No, no. The Court has never ruled that. I’ve never ruled that the public is excluded. All I’m saying is, where do you suggest we put them?
[DEFENSE COUNSEL]: We could bring in chairs and put them right here in front of the bench, Judge. We can find places to put them.
[THE COURT]: Okay. We have attorneys that are seated at both sides. We have security issues. That is unreasonable. Where would we put them? Are we going to have them stand here next to the — next to me? That — I think that would be considered a security risk. You want to open up those doors and have them all stand in that little hallway there so they can observe the whole thing? Maybe we could do that. Would that satisfy you?
[DEFENSE COUNSEL]: I just wanted an alternative, Judge.
[THE COURT]: I’m giving you alternatives. Which one would satisfy you in a way that the bailiffs would feel that their job in keeping the courtroom safe and secure would be satisfied?
[DEFENSE COUNSEL]: I can’t suggest that. If you want to open those doors and put chairs and have people-— have the public sit there, that’s fine with me.
[THE COURT]: We don’t have enough chairs. Are we going to — if you want, we can open up those doors in the back and have them stand to where they can observe and hear every single thing that’s going on.
[STATE]: And, Your Honor, just for the record, I think that’s going to be in violation of any fire codes in this city.
[THE COURT]: And that — I mean, we’re having issues. Counsel obviously wants her entire family here. I mean, I don’t know what else we could do. The courtroom’s going to be absolutely stuffed with venire panel members. I don’t know what we’re going to do.
[DEFENSE COUNSEL]: But there’s no ruling from the Court on my objection?
[THE COURT]: Your objection is that people have been excluded from the Court.
[DEFENSE COUNSEL]: Yes, sir.
[THE COURT]: The Court has never ruled that way, so I’m not sure what it is that you’re objecting to.
[THE COURT]: I am telling you that you can have people in this courtroom. I’m telling you that. Do you understand that? So there’s no issue in regards to what it is that you’re asking. I just don’t know where to put them. So I’m not making a ruling that anybody’s excluded. I’m not making a ruling deny *67 ing anything that you’re asking because I haven’t ruled on what it is that you’re asking. I haven’t told you that you cannot have people in the courtroom. Tell me where to put them and we’ll put members of her family.
[DEFENSE COUNSEL]: Okay. Thank you, Judge.
Subsequently, the jury found Cameron guilty, and she appealed, arguing in relevant part that her trial was closed to the public.
Opinions
1. Direct Appeal
A divided panel of the court of appeals held that Appellant’s right to a public trial was violated. Cameron, 415 S.W.3d at 412. The court found that, despite the trial judge’s insistence, that he had not closed the courtroom, the record reflects that it was, in fact, closed. Id. at 410. The court noted that, while the trial court may have offered an accommodation of allowing members of the public to observe the voir dire proceeding from the foyer of the courthouse, the record does not establish that any steps were taken to facilitate this proffered accommodation. Id. Moreover, the appellate court concluded that the trial court did not consider all reasonable measures to accommodate the public during voir dire, including the possibility of splitting the venire panel to make room for spectators to sit in the courtroom. Id. According to the court of appeals, because the record does not show that any of these accommodations were employed, the courtroom was closed, and Appellant’s Sixth Amendment right to a public trial was violated. Id. at 412.
Justice Angelini, writing in dissent, would have held that Appellant failed to satisfy her burden to show that voir dire was closed to the public. Id. at 413 (An-gelini, J., dissenting). She reasoned that our opinion in Lilly allocated an evidentia-ry burden to a defendant to show that their trial was closed to the public before considering the Waller factors. Lilly v. State, 365 S.W.3d 321, 331 (Tex.Crim.App. 2012); see Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984).
Justice Angelini also would have held that conducting a trial in a public courthouse should create a rebuttable presumption that the trial was open to the public unless a defendant can show that the trial was closed. Cameron, 415 S.W.3d at 415. She agreed with the majority that the appellate record is silent on many factual considerations. Id. However,- unlike the majority, Justice Angelini concluded that the silence weighs against Appellant as it was her initial burden to show that the trial was closed to the public. Id.
2. On Discretionary Review
The State appealed the judgment of the court of appeals, arguing that Appellant failed to preserve her complaint for appellate review and that the court of appeals erred in not addressing preservation. It also asserted that the burden was on Appellant to show that her trial was closed to the public and that she failed to meet that burden.
This Court affirmed the Fourth Court of Appeals’s judgment, holding that the trial court record “sufficiently shows that the voir dire proceedings were closed” and that it was not constitutionally justified under the Sixth Amendment. Cameron, 2014 WL 4996290 at *5. The State subsequently filed a timely motion for rehearing, in which it argues that our decision would be nearly impossible for trial judges to implement and that we erroneously dismissed its burden-of-proof ground for review despite the fact that we granted Ap *68 pellant relief. We granted the motion for rehearing and address its contentions now.
Discussion
1. General Public-Trial Principles
The Sixth Amendment of the United States Constitution guarantees an accused the right to a public trial in all criminal prosecutions. U.S. Const. amend. VI; Lilly, 365 S.W.3d at 328; see Johnson v. United States, 520 U.S. 461, 468-69, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). The violation of a defendant’s public-trial right is structural error that does not require a showing of harm. Lilly, 365 S.W.3d at 328; see Johnson, 520 U.S. at 468, 117 S.Ct. 1544. To prevail on a public-trial claim, a defendant must first show that the trial was, in fact, closed to the public. Lilly, 365 S.W.3d at 331 (applying the Waller test after noting that Appellant met his burden to show that the prison-chapel courtroom was closed to the public in light of the extensive evidence that the public was discouraged from attending the proceedings). To determine if a trial was closed, a reviewing court should look to the totality of the evidence, rather than whether a spectator was actually excluded from trial. Id. If the defendant’s trial was closed, the reviewing court then must decide whether the closure was proper. See id.
Some courts have applied a less stringent test for “partial” or “trivial” closures, where members of the public are temporarily excluded from the courtroom. These courts require only a “substantial” or “important” interest rather than Waller’s “compelling” reason for limiting access in' order to justify a closure,[29] in part because a less-than-complete closure does not “implicate the same secrecy and fairness concerns that a total closure does.” Garcia v. Bertsch, 470 F.3d 748, 753 (8th Cir.2006). For example, these courts have held that partial closures are permissible to exclude certain spectators when it is deemed necessary to preserve order in the courtroom. See Cosentino v. Kelly, 102 F.3d 71 (2d Cir.1996) (no violation when defendants’ families who had “rioted,” causing a mistrial, were excluded).
2. Arguments of the Parties’
Appellant argues that the court of appeals reached the right result because both the arguments of counsel and the trial court’s responses paint a plain picture of a private proceeding that was closed to the general public. She also asserts that the trial court did not factually controvert the allegations laid out. The trial court never refuted Appellant’s principal observation that the bailiff had excluded members of the public, and it repeatedly reinforced Appellant’s observation by reminding Appellant that there was no room for any *69 member of the public in the courtroom. Further, Appellant contends that the only-matter on which the trial court disagreed with Appellant was the legal result of Appellant’s observations and that there is sufficient evidence to determine that her trial was closed to the public. Thus, according to Appellant, regardless of whether the burden of proof is on Appellant to show that her trial was closed to the public, she has met that evidentiary burden.
The State responds that the court of appeals erred by not assigning a burden of proof and that, while this Court’s opinion in Lilly does not directly address the burden-of-proof issue, it was clearly implicit that the burden is on the defense. Lilly, 365 S.W.3d at 331. The court of appeals acknowledged that the record was largely silent to this issue, yet nonetheless ruled, contrary to the trial court’s findings of fact, that the court had been closed. Based on the silent record, and the fact that the burden to show the courtroom is closed to the public was on Appellant, the State argues that the court of appeals erred by granting relief without ever mentioning the applicable burden of proof.
Further, the State asserts that the court of appeals failed to follow the standard laid out in Lilly-, which holds that the first step in analyzing a public-trial claim is finding whether the court was actually closed. Id. Instead, the State argues, the court of appeals held that a Lilly analysis is one holistic inquiry that includes examining the Waller factors. The State contends that this type of review not only makes no sense, but it completely contradicts the precedent laid out in Lilly.
3. Burden of Proof to Show a Trial is Closed
The parties argue that we have never squarely addressed to whom the burden belongs to show that a trial is closed to public. While it is true that we did not directly address that issue in Lilly, our opinion makes clear that the burden to show that a trial is closed to the public is on the defendant.
In Lilly, we stated multiple times that the appellant met his burden to show that the trial was closed to the public. For example, “The State also argues that the court of appeals correctly concluded that Appellant failed to carry his burden to show that his trial was closed to the public.” Lilly, 365 S.W.3d at 326 (emphasis added). Again, as pointed out in the dissenting opinion in the court below, this Court stated, “When determining whether a defendant has proved that his trial was closed to the public, the focus is not on whether the defendant can show that someone was actually excluded.” Id. at 331 (emphasis added). Finally this Court concluded, “In sum, we hold that, under the facts of this case, Appellant met his burden to show that his trial was closed to the public.” Id. at 331-32 (emphasis added).
We now take the opportunity to definitively resolve this issue and hold that the initial burden of proof is on the defendant to show that the trial is closed to the public. If the defendant fails to carry that burden, the analysis is concluded. Only after a trial is closed to the public is it necessary to determine if the closure was justified.
4. Standard of Review of Public-Trial Claim
Next, to resolve whether Appellant met her burden to show that her trial was closed to the public, we must address the applicable standard of review on appeal.
In Guzman, this Court held,
[A]s a general rule, the appellate courts, including this Court, should afford almost total deference to a trial court’s determination of the historical facts that the record supports especially when the *70 trial court’s fact finding are based on an evaluation of credibility and demeanor. The appellate courts, including this Court, should afford the same amount of deference to trial courts’ rulings on “applications of law to fact questions,” also known as “mixed questions of law and fact,” if the ultimate resolution of those questions turns on an evaluation of credibility and demeanor. The appellate courts may review de novo “mixed questions of law and fact” not falling within this category.
Guzman v. State, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). Here, the question of whether a defendant’s trial was closed to the public is a mixed question of law and fact that does not turn on credibility and demeanor.
Unlike a legal question, such as statutory construction, in which we construe only the legal meaning of words and provisions, when dealing with the Sixth Amendment right to a public trial, deferring to the court’s findings of fact that are supported by the record is a necessary prerequisite before an appellate court can resolve whether a defendant met his burden to show his trial was closed to the public based on the totality of the evidence, and then the ultimate legal question of whether a defendant’s public-trial right was violated. Abney v. State, 394 S.W.3d 542, 548 (Tex.Crim.App.2013).
Conclusion
Having decided that the initial burden of proof is on Appellant to show that her trial was closed to the public, and after explaining the applicable standard of review on appeal, we vacate the judgment of the court of appeals and remand this cause for it to apply the principles of this opinion.
Alcala, J., filed a dissenting opinion in which Johnson, J., joined.
Yeary, J., did not participate.

. See United States v. Perry, 479 F.3d 885 (D.C.Cir.2007) (Sixth Amendment not violated by exclusion of eight-year-old son of defendant; closure was trivial when son was only person excluded, his presence would not have ensured fair proceedings, discouraged perjury, or encouraged witnesses to come forward); Carson v. Fischer, 421 F.3d 83 (2d Cir.2005) (exclusion of defendant’s ex-mother-in-law from limited portions of criminal trial did not deny defendant his right to a public trial; although the denial of the right to a public trial is not subject to a harm analysis, even an unjustified closure may, in some circumstances, be so trivial as not to implicate the right to a public trial); Ayala v. Speckard, 131 F.3d 62 (2d Cir.1997) C‘[T]he sensible course is for the trial judge to recognize that open trials are strongly favored, to require persuasive evidence of serious risk to an important interest in ordering any closure, and to realize that the more extensive is the closure requested, the greater must be the gravity of the required interest and the likelihood of risk to that interest”).